I.A.M. NATIONAL PENSION FUND
PLAN A, A BENEFITS, et
al., Plaintiffs,

v.

PABST BREWING
COMPANY, Defendant.

Civ. A. No. 88–0836–LFO.

United States District Court,
District of Columbia.

Nov. 8, 1988.

Robert Osgood, Washington, D.C., for plaintiffs.

Gary L. Lieber, Porter, Wright, Morris & Arthur, Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs, the I.A.M. National Pension Fund Plan A, A Benefits and the Board of Trustees ("the Plan"), brought this action to collect withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* Plaintiff I.A.M. National Pension Fund Plan A, ("the Plan"), is a "multiemployer pension plan" as defined by 29 U.S. C. § 1002(37). Defendant Pabst Brewing Company, ("Pabst"), is an employer which contributed to the Plan from August 1, 1965, through October 1, 1983. The plan sponsor determined that Pabst partially withdrew from participation in the Plan and was so notified by letter on April 18, 1984. The Plan then notified Pabst of its withdrawal liability by letter on October 22, 1987. Pabst filed a timely request under 29 U.S.C. § 1399(b)(2)(A) for review of the Plan's assessment of withdrawal liability.

The trustees of the Plan upheld the schedule of payments by letter on June 10, 1988. Pabst failed to make payment on the first two of four installments of withdrawal liability and was so notified by the Plan by letters on December 22, 1987, and on March 22, 1988. One of defendant's counsel, Mr. Young, points out without contradiction that on March 25, 1988, plaintiff's Withdrawal Liability Supervisor agreed to give defendant until March 30, 1988 to determine whether defendant would voluntarily remit the installments to avoid litigation and stated that plaintiff would not file suit if advised that Pabst had agreed to pay and would pay shortly. The Withdrawal Liability Supervisor later informed Mr. Young that she needed to be advised by the end of March 29 rather than March 30. Mr. Young advised the Supervisor on March 29 that defendant Pabst agreed to remit the installments due as of that date, plus accrued interest. Affidavit of Stuart H. Young, Jr. in Support of Pabst Brewing Company Motion for Summary Judgment, dated June 21, 1988, at 5–6. Plaintiffs nevertheless filed the complaint in this action on March 29, 1988. On April 8, 1988, defendant paid the first and second installments. On May 20, 1988 defendant paid interest on those overdue withdrawal liability installments. On June 7, 1988 Pabst timely initiated arbitration within the meaning of 29 U.S.C. § 1401 over the Plan's assessment of partial withdrawal liability.

This case is presently before the court on cross-motions for summary judgment and defendant's motion for Rule 11 sanctions. Plaintiffs move for summary judgment that statutorily mandated double interest, attorneys' fees, and court costs must be awarded in an action to compel withdrawal liability payments. Plaintiffs demand payment of the additional amount of interest due, pursuant to 29 U.S.C. § 1132(g)(2). The Plan has not received payment of the second amount of interest, its attorneys' fees, or court costs. Plaintiffs set forth the mandate of 29 U.S.C. § 1399(c)(2) that "withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... beginning no later

than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." Plaintiffs further set forth the requirements of 29 U.S.C. § 1401(a)(1), which direct that challenges to withdrawal liability determinations of the plan sponsor be resolved through arbitration. The Plan concludes that Pabst must abide by the payment schedule set forth by the plan sponsor while it contests the withdrawal liability determination. Plaintiffs state that Pabst was billed for withdrawal liability by the Plan, and failed to pay the withdrawal liability assessed in conformance with the plan sponsor's schedule before legal action was instituted. Plaintiffs claim that therefore the Plan is entitled to judgment in its favor for all amounts mandated by 29 U.S.C. § 1132(g)(2).

Defendant Pabst opposes plaintiffs' motion and also moves for summary judgment and for Rule 11 sanctions. Defendant contends that plaintiffs may not recover double interest and attorneys' fees unless and until an arbitration award adverse to defendant is rendered. Defendant concedes that it is true that ERISA provides at 29 U.S.C. § 1451(b) that "In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution ...," and that in an action to recover delinquent contributions a plan may pursue double interest and attorneys' fees. However, defendant Pabst argues that at this stage of the dispute it has not been determined whether defendant "withdrew" from the plan, and thus it cannot be determined in this case whether any "withdrawal liability" has been incurred until an arbitrator has ruled on that issue. Pabst argues that its October, 1983 exchange of one of its facilities in Minnesota for a facility of another brewery in Florida did not trigger liability, because covered work was not transferred from one facility to the other. Pabst further contends that it filed a timely request for review pursuant to 29

U.S.C. § 1399(b)(2)(A), and then intitated arbitration pursuant to 29 U.S.C. § 1401(a)(1). In support of its motion for Rule 11 Sanctions, defendant argues that the parties agreed that no suit would be filed if Pabst, on or before March 30, advised plaintiff that it intended to remit the progress payments. Defendant Pabst argues that it carried out its part of the bargain, but plaintiff did not, and that the court should discourage such practices on the part of plaintiff by granting defendant's motion.

■ The law in this jurisdiction is clear that pending arbitration does not suspend an employer's obligation to pay the withdrawal liability that has been assessed. *Connors v. Brady–Cline Coal Co.*, 668 F.Supp. 5, 7 (D.D.C.1987); *I.A.M. v. Dravo Corp.*, 641 F.Supp. 50, 52 (D.D.C.1985). In *Dravo*, this court initially denied plaintiff's request for penalty interest, attorneys' fees and costs under 29 U.S.C. § 1132(g)(2) without prejudice to renewal upon the effective date of the arbitrator's decision. When the *Dravo* court later considered plaintiff's motion to vacate the arbitration award, however, following the Third Circuit's decision in *United Retail & Wholesale Emp. v. Yahn & McDonnell*, 787 F.2d 128 (3rd Cir. 1986), *aff'd*, 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987), the court ruled, citing *Yahn*, that "as the Third Circuit has ruled, the Court has no alternative but to entertain the Plan's application for reimbursement for attorneys' fees and expenses incurred in connection with their effort to recover interim payments." *Dravo, supra* at 57. *Connors, supra,* is similar to the case before this court. In that case, plaintiff trustees of the United Mine Workers of America brought action to collect withdrawal liability. Defendants contended, *inter alia,* that there was a factual dispute over whether Brady–Cline did indeed withdraw from the Plan. Judge Hogan stated that "this is the very issue to be resolved in arbitration", and he entered summary judgment for plaintiffs. Judge Hogan then held that "[p]laintiffs, having succeeded on their motion for summary judgment to collect withdrawal liability payments, are entitled to liquidated damages, costs and reasonable attorney's fees." *Id.* at 10. Judge Hogan reasoned that

> failure to make withdrawal liability payments is treated as a delinquent contribution within the meaning of Section 1145. 29 U.S.C. § 1451(b). The language of Section 1132(g)(2) is mandatory; the decision to award attorney's fees to successful litigants in actions for delinquent payments does not fall to the discretion of the Court.

*Id.* If the arbitrator decides that Pabst has no withdrawal liability, or any amount less than or more than the amount assessed, the statute provides for adjustments. *See* 29 U.S.C. § 1401(d).

■ Application of the principles of *Yahn, supra, Dravo, supra,* and *Connors, supra,* require granting plaintiffs' motion for summary judgment. "Delinquent payments" are governed by 29 U.S.C. § 1401(d) or 29 U.S.C. § 1451(b). Pabst has failed to make a withdrawal liability payment within the time prescribed and thus that failure should be treated as a "delinquent contribution" under 29 U.S.C. § 1451(b). According to *Yahn,* under 29 U.S.C. § 1132(g), if the Plan wins judgment for a delinquent payment, attorneys' fees, liquidated damages, and other costs *must* be paid by the employer, even though the matter has yet to go to arbitration. *See Yahn, supra,* at 134–35.

■ A question remains as to whether defendant is entitled to a Rule 11 sanction. Pabst argues that the Plan should be held to its agreement with Pabst not to bring a suit if Pabst agreed to remit the progress payments, which it has done. It is undisputed that plaintiffs filed this action on the same day that defendant agreed to make payment and that plaintiffs' Withdrawal Liability Supervisor represented to one of defendant's counsel that no suit would be filed if defendant agreed on that date to voluntarily remit the progress payments. Affidavit of Stuart H. Young, Jr., *supra.* An appropriate sanction is to relieve defendant of its liability for attorneys' fees and court costs incurred by plaintiffs in an action which was unnecessary to vindicate

plaintiffs' rights. On March 25, 1988 plaintiffs agreed to forebear from suit if defendant promised by March 30, later revised to March 29, to pay promptly. On March 29, defendant made such a promise. Plaintiffs nevertheless filed suit on that date. Filing of that suit was not only a breach of that agreement, but created avoidable and unnecessary litigation. Rule 11 authorizes sanctions where a party files a suit that is not "grounded in fact" or "warranted by ... law." The March 25 agreement rendered this suit unwarranted and the filing of it sanctionable under Rule 11.

Accordingly, an order filed on October 31, 1988 grants plaintiffs' motion for summary judgment and defendant's motion for Rule 11 sanctions.